# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 2, 2004

## STATE OF TENNESSEE v. DENNIS WATSON

**Direct Appeal from the Circuit Court for Dyer County**
No. C03-208      Lee Moore, Judge

---

### No. W2004-00153-CCA-R3-CD  - Filed March 22, 2005

---

The defendant, Dennis Watson, pled guilty to possession with the intent to sell or deliver a controlled substance, Schedule II, cocaine, in an amount over .5 grams, a Class B felony, in exchange for a sentence of twelve years as a standard Range I offender in the Department of Correction.  The defendant reserved two certified questions of law for this appeal: (1) whether the trial court erred in denying his motion to dismiss based upon the right to a speedy trial; and (2) whether the trial court erred in denying his motion to suppress.  After reviewing the issues, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLIN, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Lanis L. Karnes, Jackson, Tennessee, and H. Rod Taylor, Assistant Public Defender, for the appellant, Dennis Watson.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### I.  Facts and Procedural Background

On June 9, 2003, a Dyer County grand jury indicted the defendant for possession with intent to sell or deliver a Schedule II controlled substance, cocaine, in an amount over .5 grams, a Class B felony.  On July 21, 2003, the defendant filed a motion to dismiss for failure of the State to prosecute.

In the defendant's motion to dismiss, he argued that the delay in bringing the matter to trial prejudiced his case.  At the hearing, the defendant called two witnesses, Mr. Napper and Mr.

Bennett. The two witnesses worked at a repair shop that was in possession of the truck in which the defendant was arrested prior to his arrest in September of 2002. Mr. Napper testified that he could not remember the exact date or time that he worked on the truck. Mr. Bennett testified that he could not remember how long it took for the defendant to pick up the truck.

On cross-examination, Mr. Napper stated that no one had contacted him near the date of the offense to testify. Mr. Bennett testified that no one had contacted him to testify until "several months ago."

The defendant testified that he asserted his right to a speedy trial by sending "a letter to the clerk's office . . . asking for this case or whatever cases they had against me to be disposed of." However, he could not produce a copy of the letter at the hearing. The trial court stated, "[i]t's not in this file, and there's no record of any letter, and probably, Mr. Watson, because you sent it to the wrong place."

At the conclusion of the hearing, the trial court stated:

> [F]rom the proof today, it appears that the only delay that there was in presenting this case was that it was not presented to the grand jury in April of 2003. It does not appear that there is any intention of delay, and there was not any delay designed to gain tactical advantage.
> I don't see the prejudice either. The motion will be denied.
> Also, I might point out that from the time that the motion to dismiss and motion to suppress have been filed, the case has been moving, and it has been - - the continuances have been at the request of the defendant. The motion will be denied.

The trial court filed an order denying the motion to dismiss on November 6, 2003. In the order, the trial court stated that "the only delay cause [sic] by the State was in bringing the indictment and that this delay was not intentional but due to indifference or negligence and not designed to gain any type of tactical advantage over the Defendant . . . ."

The defendant filed a motion to suppress on August 15, 2003. He argued that the evidence was obtained through a warrantless and illegal search of his person and vehicle. The trial court held a separate hearing on the motion on September 30, 2003.

At the hearing, the State called two witnesses, Officers Waller and Justiss. On direct examination, Waller testified that he was on patrol with Justiss on September 25, 2002. Waller stated that they were looking for the defendant in order to serve an arrest warrant for a parole violation. After Waller "noticed [the defendant] pumping gas in his truck at Jerry's market," Waller "got out and approach [sic] [the defendant] and advised him that [they] did have a warrant." Waller testified that the defendant then "looked around and he reached down to the floor board and he raised back up." The officers then searched the defendant before placing him in the back of the squad car.

When they returned to search the defendant's vehicle, the officers noticed "a bag of what [they] believed to be crack cocaine."

On cross-examination, Waller could not recall if any bystanders were present at Jerry's Market during the arrest. He acknowledged that the defendant's vehicle belonged to "a Ms. Pyrtle," but could not recall who phoned her to pick up the truck. He stated that she was contacted before they initiated the search of the vehicle.

Justiss corroborated Waller's testimony on direct examination. On cross-examination, the defense sought to elicit the length of delay between the arrest and the search of the vehicle. Justiss stated that the delay could not have been "twenty, thirty, [or] forty minutes after the arrest."

The defense then introduced the testimony of its witnesses to show the length of delay between the arrest and the search. The defendant's brother testified that the officers searched the vehicle "a few minutes" after he had arrived at the scene. The clerk at Jerry's Market, Ms. Yonkers, testified that she does not "have any concept of time when [she is] busy at work. It could have been fifteen minutes." The defendant testified that the delay "seemed like . . . twenty, twenty-five minutes."

In an order denying the motion to suppress, the trial court stated that "the search was made incident to a lawful arrest; that the evidence seized is therefore admissible; and that the Defendant's motion should therefore be denied . . . ."

On December 16, 2003, the defendant pled guilty and received an agreed sentence of twelve years as a standard Range I offender in the Department of Correction. The standard judgment form states:

> Defendant reserves two questions of certified law which are dispositive of this cause with the express agreement of both the state and court. Said questions of law are set forth in an order filed contemporaneously with this judgment and the terms of that order are expressly incorporated as if set forth verbatim.

The order contains the two certified questions: (1) whether the trial court erred in denying Defendant's motion to dismiss the indictment based upon Defendant's right to a speedy trial; and (2) whether the trial court erred in denying Defendant's motion to suppress the evidence. The defendant now brings this appeal.

## II. ANALYSIS

### Issues

Before reaching the merits of the defendant's arguments, we must first determine whether he has presented each issue in compliance with Rule 37 of the Tennessee Rules of Criminal

Procedure. Rule 37(b) states that an appeal lies from a guilty plea only when a defendant has, with consent of the State and the trial court, reserved a certified question of law that is dispositive of the case. Tenn. R. Crim. P. 37(b). The following additional requirements must be met: (a) the judgment, or document to which the judgment refers, must contain a statement of the certified question of law; (b) the question of law must be stated so as to clearly identify its scope and limits; (c) the judgment or document must reflect the consent of the State and trial court; and (d) the judgment or document must reflect that all parties agree that the issue is dispositive of the case. Id.

In the instant case, the defendant has properly reserved two arguments for appeal: (1) whether the trial court erred in denying his motion to dismiss due to an alleged violation of his right to a speedy trial; and (2) whether the trial court should have granted his motion to suppress. These two questions of law are dispositive, explicitly reserved by the trial court through an order filed contemporaneously with the judgment, and referenced on the face of the judgment. Therefore, these questions are properly before this Court.

On appeal, the defendant also challenges the sufficiency of the indictment. He argues that the indictment contains an incorrect offense date. This argument briefly appears in his motion to dismiss. However, the defendant has only reserved for appeal a question asking whether the trial court erred in denying his motion to dismiss on speedy trial grounds. Any additional arguments in support of his motion to suppress were not properly reserved for our review. "No issue beyond the scope of the certified question will be considered." State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). Therefore, the defendant's argument that the indictment is insufficient was not properly certified, and we lack jurisdiction to reach the merits of the issue.

## A. Denial of Right to Speedy Trial

The defendant's first argument is that the trial court should have granted his motion to dismiss because the State violated his right to a speedy trial. He asserts that the delay in bringing the matter to trial was prejudicial because: (1) he lost the opportunity to serve his sentence concurrently with a sentence for a separate charge; (2) he was incarcerated during the length of delay; (3) the delay caused the loss of evidence; and (4) the delay caused him duress. Having determined that this issue is properly before us, we reach the merits.

Both the United States and Tennessee Constitutions guarantee criminal defendants the right to a speedy trial. U.S. Const. amend VI; Tenn. Const. art. I, § 9; State v. Utley, 956 S.W.2d 489, 492 (Tenn. 1997). A right to a speedy trial is also statutory in Tennessee. See Tenn. Code Ann. § 40-14-101. The Tennessee Rules of Criminal Procedure provide for the dismissal of an indictment if there exists unnecessary delay in bringing a defendant to trial. Tenn. R. Crim. P. 48(b). The Tennessee Supreme Court employs the balancing test that the United States Supreme Court established in Barker v. Wingo, 407 U.S. 514 (1972), to determine whether a speedy trial violation has occurred. See State v. Simmons, 54 S.W.3d 755, 759 (Tenn. 2001). The Barker test weighs (1) the length of delay, (2) the reasons for the delay, (3) the accused's assertion of the right to a speedy trial, and (4) the prejudice resulting from the delay. Barker, 407 U.S. at 530-32. If a court determines, after

applying the Barker balancing test, that a defendant has been denied a speedy trial, the remedy is dismissal of the indictment. Id. at 522.

A trial court's findings of fact are conclusive on appeal unless the evidence preponderates against them. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing legal issues, however, our review is de novo with no presumption of correctness given to the findings below. Id. Cases that involve mixed questions of law and fact are subject to de novo review with a presumption that the purely factual findings are correct. See Fields v. State, 40 S.W.3d 450 (Tenn. 2001). The question regarding the right to a speedy trial is a mixed question of law and fact. State v. Picklesimer, No. M2003-03087-CCA-R3-CD, 2004 WL 2683743, at *2 (Tenn. Crim. App., at Nashville, Nov. 24, 2004).

### 1. The Length of Delay

We first consider the length of the delay. It is not necessary to inquire as to the other factors of the speedy trial analysis until a presumptively prejudicial delay is proved. Barker, 407 U.S. at 530. Generally, post-accusation delay must approach one year to trigger a speedy trial inquiry. See Doggett v. United States, 505 U.S. 647, 652, n.1 (1992); Utley, 956 S.W.2d at 494. The reasonableness of a delay depends upon the complexity and nature of the case. Doggett, 505 U.S. at 652; Utley, 956 S.W.2d at 494.

In the instant case, the defendant complains of a delay totaling eleven months. However, the trial court noted that "the continuances have been at the request of the defendant." Furthermore, the defendant was not in custody as a result of this particular case, but for an unrelated parole violation. In any event, the delay was less than one year and certainly not unreasonable when compared to other cases. Compare State v. Wood, 924 S.W.2d 342 (Tenn. 1996) (finding delay of nearly fourteen years between presentment of indictment and trial did not violate speedy trial right); Doggett, 505 U.S. at 647 (finding delay of eight and one-half years between indictment and arrest violated speedy trial right). The delay in this case does not exceed the triggering threshold; therefore, this factor does not weigh heavily against the State.

### 2. The Reason for Delay

Next, we consider the reason for delay. This factor generally falls into one of four categories: (1) intentional delay to gain a tactical advantage over the defense or to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense. Wood, 924 S.W.2d at 346-47.

The trial court found that "this delay was not intentional but due to indifference or negligence" and noted that any "continuances have been at the request of the defendant." "[W]hen the reason for delay is negligence, the weight to be assigned this factor differs depending upon the length of delay." Simmons, 54 S.W.3d at 760. As stated, the delay in this case barely reaches the

triggering point for analysis and is partially due to the defendant's own request for continuances. Therefore, this factor does not weigh in the defendant's favor.

### 3. The Assertion of Right

The third factor to consider when conducting a <u>Barker</u> test is whether the defendant asserted his right to a speedy trial. <u>Barker</u>, 407 U.S. at 531-32. Assertion of the right strongly weighs in favor of the defendant, while failure to assert the right ordinarily will make it difficult to prove that the right has been denied. <u>Id.</u>

The defendant in this case claims to have sent a letter requesting that the trial court move his case along, yet he could not produce a copy of the alleged letter. The trial court stated, "[i]t's not in this file, and there's no record of any letter, and probably, Mr. Watson, because you sent it to the wrong place." The record shows no other evidence that the defendant asserted his right to a speedy trial; thus, we determine that this factor does not weigh in the defendant's favor.

### 4. Prejudice Suffered by the Defendant

The final and most important factor in the <u>Barker</u> analysis is whether the accused has suffered prejudice from the delay. <u>Barker</u>, 407 U.S. at 532. When evaluating this factor, courts must be aware that the right to a speedy trial is designed (1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation, and (3) to limit the possibilities that long delay will impair the defense. <u>State v. Bishop</u>, 493 S.W.2d 81, 85 (1973); <u>see</u> <u>Smith v. Hooey</u>, 393 U.S. 374, 378 (1969).

Obviously, the defendant cannot successfully argue that his incarceration has caused anxiety because he was already in jail for an unrelated offense. Moreover, our supreme court has stated that the "defendant's lost possibility of obtaining concurrent sentencing [is] not sufficient prejudice to establish a speedy trial violation." <u>See</u> <u>Simmons</u>, 54 S.W.3d at 755. Finally, the delay in this case has not impaired the defense. The trial court in this case concluded, "the testimony . . . is still available, and Mr. Watson can testify . . . if he chooses to testify. And the witnesses, as they were today, could be corroborating witnesses. I don't see the prejudice . . . ."

After applying the <u>Barker</u> factors, we find that the defendant has not suffered a violation of his right to a speedy trial. Therefore, we affirm the trial court's denial of the defendant's motion to dismiss.

### B. Motion To Suppress

The defendant next claims that the warrantless search of his vehicle was unconstitutional. As previously determined, this issue is properly before us in accordance with Rule 37(b) of the Tennessee Rules of Criminal Procedure.

"[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Id. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. However, this Court reviews the trial court's application of the law to the facts de novo. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001) (citation omitted).

"[U]nder both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly-defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (citations omitted). One such exception to the warrant requirement is a search incident to a lawful arrest. See New York v. Belton, 453 U.S. 454 (1981). Police officers have authority to search the passenger compartment of an automobile contemporaneous to an arrest. Id. at 460.

In United States v. White, 871 F.2d 41 (6th Cir. 1989), the Sixth Circuit Court of Appeals allowed a warrantless search of an automobile as incident to a lawful arrest even though the defendant, sitting in the back seat of a police car, had been restrained and presented no danger to police. In State v. Reed, 634 S.W.2d 665 (Tenn. Crim. App. 1982), this Court upheld a vehicle search after the defendant had been placed into a patrol car. The Tennessee Supreme Court has also held that a police officer may conduct a search of the passenger compartment of an automobile after an arrestee has been neutralized in the back of a police car. State v. Watkins, 827 S.W.2d 293, 296 (Tenn. 1992).

The defendant suggests that the instant case is distinguishable and that the search of his vehicle was not proper because he was secured in the back of the patrol car for a period of time that destroyed the contemporaneity of the arrest. In support of his argument, the defendant cites United States v. Vasey, 834 F.2d 782 (9th Cir. 1987) (holding that a search conducted thirty to forty-five minutes after an arrest destroyed contemporaneity).

The length of delay between the arrest and search was a question of fact for the trial court. The trial judge was in the best position to determine whether this delay actually existed. The only witness that testified that it "seemed like" twenty to twenty-five minutes passed before a search occurred was the defendant, himself. Officers Waller and Justiss could not remember the exact length of delay; however, Justiss stated that it was not "twenty, thirty, [or] forty minutes after the arrest." The other defense witness, Ms. Yonkers, stated that it "could have been fifteen minutes," however, she "[does not] have any concept of time when [she is] busy at work." The trial court failed to find the existence of a lengthy delay and nothing in the record preponderates against this finding. Consequently, the defendant's argument is without merit.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE